**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RAHEEM FLUELLEN,<br><br>Plaintiff,<br><br>v.<br><br>INNOVATIVE RECOVERY, INC.,<br><br>Defendant. | ) | Civil Action No. 25-cv-02589-LKG<br><br>Dated: September 16, 2026<br><br>**RE-ISSUED** |

## MEMORANDUM OPINION[1]

## I. INTRODUCTION

In this civil action, the Plaintiff, Raheem Fluellen, brings claims under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. 1692 *et seq.*, the Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*, the Maryland Consumer Protection Act (the "MCPA"), Md. Code Ann., Com. Law §13-101 *et seq.*, and for trespass to chattels, against the Defendant, Innovative Recovery, Inc. ("Innovative"), arising from Innovative's attempts to collect an apartment-related debt. *See generally* ECF No. 1. Innovative has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 11. The motion is fully briefed. ECF Nos. 11, 15 and 18. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS** the Defendant's motion to dismiss (ECF No. 11) and (2) **DISMISSES** the complaint.

[1] The Court initially issued this opinion under seal on September 16, 2026, to allow the parties to review the opinion and request any redactions of sensitive information. ECF No. 22. On October 15, 2026, the parties filed a joint status report stating that they do not seek any redactions. ECF No. 23. And so, the Court issues the public version of this opinion without redactions.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

In this civil action, the Plaintiff brings claims under the FDCPA, the MCDCA, the MCPA and for trespass to chattels against Innovative, arising from Innovative's attempts to collect a debt for past-due rent (the "Apartment Debt"). *See generally* ECF No. 1. Specifically, the Plaintiff asserts the following claims against Innovative in the complaint: (1) violation of the FDCPA (Count I); (2) violation of the MCDCA (Count II), (3) violation of the MCPA (Count III); and (4) common law trespass to chattels (Count IV). *Id.* at ¶¶ 18-55. As relief, the Plaintiff seeks, among other things, to recover monetary damages from Innovative. *Id.* at Prayer for Relief.

The Parties

Plaintiff Raheem Fluellen is a resident of Maryland. *Id.* at ¶ 1.

Defendant Innovative Recovery, Inc. is a corporation that is organized under the laws of Texas, with its principal place of business located in Texas. *Id.* at ¶ 2.

Case Background

As background, the Plaintiff previously resided in an apartment unit within the Thayer Terrace Apartments ("Thayer Terrace") located in Silver Spring, Maryland. *Id.* at ¶ 7. In 2024, the Plaintiff brought a lawsuit against Thayer Terrace for alleged violations of his lease agreement and related conduct in the Circuit Court for Montgomery, Maryland (the "State Lawsuit"). *Id.* at ¶ 8; *see also Raheem Fluellen v. SHP VI Thayer Terrace, LLC, et al.*, No. C-15-CV-24-005059 (Md. Cir. Ct. Montgomery County Sep. 17, 2024).[3] In April 2025, the parties amicably resolved the State Lawsuit, by entering into a written settlement agreement (the "Settlement Agreement"). ECF No. 1 at ¶ 9; ECF No. 14.

---

[2] The facts recited in this Memorandum Opinion are taken from the complaint; Innovative's motion to dismiss and exhibit attached thereto; the Plaintiff's response in opposition to Innovative's motion; and Innovative's reply brief. ECF Nos. 1, 11, 14, 15, 15-1 and 18. On November 13, 2025, Innovative filed a copy of the Settlement Agreement under seal. ECF No. 14. The Plaintiff does not dispute that this document is a true and accurate copy of the Settlement Agreement. *See* ECF Nos. 15 and 15-1. Because this sealed document is addressed in this Memorandum Opinion, the Court files the Memorandum Opinion under seal.

[3] The Plaintiff brought the following claims against Thayer Terrace in the State Lawsuit: (1) negligence; (2) gross negligence; (3) negligent breach of warranty to repair; (4) breach of contract; (5) tort arising out of breach of contract; (6) violation of the Maryland Code, Real Property § 8-211; (7) breach of implied covenant of quiet enjoyment, Maryland Code, Real Property § 2-115; (8) unjust enrichment; (9) unfair or deceptive trade practice, MCPA, § 13-301; (10) negligent misrepresentation; (11) fraud; and (12) civil conspiracy. ECF No. 15-1.

In the complaint, the Plaintiff alleges that, pursuant to the Settlement Agreement, he and Thayer Terrace "agreed to a broad release of claims, known or unknown, arising out of the tenancy." ECF No. 1 at ¶ 9. But the Plaintiff alleges that Innovative persisted with attempts "to collect a debt arising from the tenancy but extinguished on April 1, 2025 via the mutual settlement agreement." *Id.* at ¶ 10. In this regard, it is undisputed that Innovative is a "debt collector" as defined by the FDCPA. *Id.* at ¶ 3; ECF No. 11.

The Plaintiff alleges that he notified Innovative that the Apartment Debt was extinguished by the Settlement Agreement, but Innovative "casually dismissed [his] notice and insisted on continuing with the debt collection action." ECF No. 1. at ¶ 11. In addition, the Plaintiff alleges that he began receiving phone calls and texts to his cellular phone from Innovative, after he filed the State Lawsuit. *Id.* at ¶ 12. And so, the Plaintiff alleges that he suffered stress, confusion and reputational harm, as a result of Innovative's debt collection efforts. *Id.* at ¶ 16.

<u>The Plaintiff's Claims</u>

In Count I of the complaint, the Plaintiff alleges that Innovative violated Sections 1692e and 1692f of the FDCPA by: (1) "using false, deceptive, and misleading representation in connection to collection of the alleged debt" and (2) falsely misrepresenting "the character, amount or legal status of the alleged debt as [Innovative] sought to collect a debt that Plaintiff was not legally obligated to pay." *Id.* at ¶¶ 25-26. In addition, the Plaintiff alleges that Innovative violated the FDCPA by: (1) reporting information about this debt despite knowing it was false and inaccurate; (2) "making false representations and employing deceptive means' to induce the Plaintiff to pay the debt and (2) using "unfair and unconscionable means" to collect the debt. *Id.* at ¶¶ 27-30. And so, the Plaintiff contends that he has been harmed and suffered damages due to Innovative's conduct. *Id.* at ¶ 33.

In Count II of the complaint, the Plaintiff alleges that Innovative violated the MCDCA through this same conduct. *Id.* at ¶¶ 37-41. And so, the Plaintiff also contends that he has suffered damages, including emotional distress, due to Innovative's conduct. *Id.* at ¶ 41.

In Count III of the complaint, the Plaintiff alleges that Innovative violated the MCPA, by making materially false, misleading oral or written statements, omissions, or other representations regarding the debt. *Id.* at ¶ 46. And so, the Plaintiff contends that he has suffered damages as a result of this conduct. *Id.* at ¶ 47.

Lastly, the Plaintiff alleges in Count IV of the complaint that Innovative committed the tort of trespass to chattels, because it "barraged [him] with numerous calls, leaving him

unable to use or possess his cellular phone in the manner he wanted to." *Id.* at ¶ 52. And so, the Plaintiff also contends that he suffered damages, including emotional distress, as a result of this conduct. *Id.* at ¶ 55.

The Settlement Agreement

Lastly, there are several provisions of the Settlement Agreement that are relevant to the pending motion to dismiss. And so, the Court briefly summarizes these provisions below.

First, the recitals of the Settlement Agreement provide that:

> **WHEREAS**, the **PARTIES** desire to amicably resolve any and all claims and disputes which do or might exist between them, whether known or unknown, from the beginning of time up to and including the date of this **AGREEMENT** arising out of, related to, or connected with the ownership, management, maintenance, possessions, custody or control by the **RELEASED PARTIES** of the apartment complex known as the **THAYER [TERRACE] APARTMENTS** located at 525 Thayer Avenue, Silver Spring, Maryland 20910 (hereinafter "**PREMISES**"), including, but not limited any actions by the **RELEASED PARTIES** of any kind whatsoever in connection with or in way related to the injuries or damages of any kind whatsoever suffered by **RELEASOR** as the result of the occupancy of the Premises or any party thereof, or in any way arising out of, or related to the facts or matters alleged in the pleadings and papers filed in in the Montgomery County Circuit Court and styled as Raheem Fluellen v. SHP VI Thayer Terrace LLC et al., Case No. C-15-CV-24- 005059 (hereinafter the "**ACTION**"), (which claims and disputes listed above are hereinafter referred to collectively as the "**CLAIMS**"); and
>
> **WHEREAS**, it is the express intent of the **PARTIES** hereto to resolve and extinguish once and forever any and all further litigation with respect to the **CLAIMS**, and to resolve any and all disputes related to or arising from the **CLAIMS** in such a fashion that the **RELEASED PARTIES** have no further potential liability, whether currently known or unknown, arising out of or related to the **CLAIMS**.

ECF No. 14 at 1. Second, Section 4 of the Settlement Agreement, which is entitled "No Admission," provides that:

> By reason of agreeing to this compromise and agreement, **RELEASOR** acknowledges that the **RELEASED PARTIES** hereby deny liability of any and every sort and state that they have made no agreement to do or omit to do any act or thing not set forth herein. They further state that this **AGREEMENT** is entered into as a compromise in order

> to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including further developments thereof, in any way growing out of or connected with the facts, matters, or allegations involved in the aforementioned **CLAIMS**.

*Id.* at 2.

In addition, Section 7 of the Settlement Agreement, which is entitled "General Release," provides, in relevant part, that:

> (A) Release. **RELEASOR** hereby releases, acquits, and forever discharges all of the **RELEASED PARTIES** of and from any and all claims or demands of whatsoever nature, actions and causes of action, liabilities, damages, debts, sums of money, costs, judgments, obligations, demands, losses of service, attorney's fees, costs of litigation, humiliation, embarrassment, mental anguish, injury to reputation, money benefits or compensation of any kind, whether known or unknown, suspected or unsuspected, fixed or contingent, at law or in equity, without reservation or exception, that are in any way related to or arising from the **CLAIMS**. . .
>
> (D) **RELEASOR** understands and agrees that by execution of this **AGREEMENT**, **RELEASOR** intends to release, and do release any and all **CLAIMS** whatsoever, without reservation or exception, that are in any way growing out of, any and all known and unknown, foreseen and unforeseen injuries and damages and the consequences arising out of or related to the **CLAIMS**, regardless of whether such injuries or damages have actually been suffered, experienced, or incurred by the **RELEASOR**, or whether such injuries or damages are suffered, experienced, or incurred in the future.
>
> (E) **RELEASOR** covenants and agrees not to sue or otherwise bring any causes of action relating to or arising out of the released **CLAIMS** against anyone before any court, arbitrator or other tribunal in any jurisdiction. The **RELEASED PARTIES** may plead this **AGREEMENT** as a complete bar to any **CLAIMS** brought in derogation of this covenant not to sue. Furthermore, the **RELEASOR** covenants and agrees to indemnify and hold the **RELEASED PARTIES** harmless for all and any costs, expenses, or legal and attorney's fees, incurred as a result of any **CLAIMS** brought in contravention of this provision.
>
> (F) The settlement payment set forth herein shall constitute full and final settlement of any and all claims the **RELEASOR** may have against any of the **RELEASED PARTIES** for any and every reason related to or arising out of the **CLAIMS**.

*Id.* at 3-4.

Lastly, Section 13(C) of the Settlement Agreement, which addresses choice of law, provides that the Settlement Agreement "shall be governed by and interpreted according to the laws of the State of Maryland." *Id.* at 5.

**B. Procedural Background**

The Plaintiff commenced this civil action on August 6, 2025. ECF No. 1. On November 12, 2025, Innovative filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF No. 11.

On November 25, 2025, the Plaintiff filed a response in opposition to Innovative's motion to dismiss. ECF No. 15. On December 3, 2025, Innovative filed a reply brief. ECF No. 18.

The Defendant's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of the plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).[4]

[4] A motion to dismiss under the Federal Rule of Civil Procedure 12(b)(6) "must be treated as one for summary judgment" when "matters outside the pleadings are presented" to the Court. *See* Fed. R.

**B. Contract Interpretation**

Under Maryland law, "[t]he interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 544 (Md. 2003)) (alteration in original). A contract is ambiguous "if its language is susceptible to multiple interpretations by a reasonable person." *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 233 (Md. 2013).

In this regard, Maryland courts apply the objective theory of contract interpretation, looking to the language of the contract itself. *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (internal citations omitted). Under this theory, the "court's duty is to determine the intent of the parties as reflected in the terms of the contract." *Sy-Lene of Wash., Inc.*, 829 A.2d at 546. Given this, "a contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." *Dumbarton Improvement Ass'n, Inc.*, 73 A.3d at 232 (citations omitted); *see also Ward v. Lassiter*, 2017 WL 128233, at *2 (Md. Ct. Spec. App. Jan. 13, 2017) (Under the objective theory, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.").

When interpreting the language of a contract, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Chaplick for Canal Vista Tr. v. Jeng Fen Mao*, 215 F. Supp. 3d 470, 479 (D. Md. 2016) (quoting *Sy–Lene of Wash., Inc.*, 829 A.2d at 546). To that end, this Court has held that "a contract should not be read to include meaningless or superfluous language." *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 532 (D. Md. 2014); *see also Rota-McLarty v. Santander Consumer USA Inc.*, 700 F.3d 690, 701 (4th Cir. 2012) ("Basic principles of contract interpretation instruct us to look first to the plain meaning of the contract's terms, and also to give meaning to each word used and avoid constructions that render language meaningless, superfluous, or contradictory.").

---

Civ. P. 12(d). The United States Court of Appeals for the Fourth Circuit has held, however, that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

Relevant to this dispute, the United States Court of Appeals for the Fourth Circuit has held that, "[c]ontracts often contain recitals: provisions that do not make binding promises but merely recite background information about factual context or the parties' intentions" and that "Maryland law recognizes the general principle that such recitals are not binding and, while they may aid the court in interpreting the contract's operative terms, cannot displace or supplement operative terms that are clear." *Sprint Nextel Corp. v. Wireless Buybacks Holdings*, 938 F.3d 113, 127 (4th Cir. 2019). This Court has also held that, "[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it." *Thompson v. United States Dep't of Hous. & Urb. Dev.*, No. 95-309, 2016 WL 6134165, at *4 (D. Md. Oct. 21, 2016) (quoting *Heist v. E. Sav. Bank, FSB*, 884 A.2d 1224, 1228 (Md. 2005)).

## IV. ANALYSIS

Innovative has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the grounds that the Plaintiff's claims in this case fail as a matter of law, because the Settlement Agreement did not release the Apartment Debt. ECF No. 11 at 3-4. And so, Innovative requests that the Court dismiss the complaint. ECF No. 11 at 5.

In his response in opposition to Innovative's motion to dismiss, the Plaintiff counters that the Court should not dismiss this case, because the Settlement Agreement contains a global release by both parties and the plain language of this agreement shows that Thayer Terrace released the Apartment Debt. ECF No. 15 at 3-6. And so, the Plaintiff requests that the Court deny Innovative's motion to dismiss. *Id*. at 6-7.

For the reasons that follow, a careful reading of the complaint makes clear that the Plaintiff's claims in this civil action are premised upon his contention that Thayer Terrace agreed to release its claims related to the Apartment Debt in the Settlement Agreement, and that Innovative's attempts to collect this debt violate various consumer laws. But the Settlement Agreement makes clear that Thayer Terrace did not release the Apartment Debt under this agreement. Given this, the Plaintiff fails to state plausible claims against Innovative related to the collection of this debt. And so, the Court: (1) GRANTS the Defendant's motion to dismiss (ECF No. 11) and (2) DISMISSES the complaint.

### A. The Plaintiff Fails To State Plausible Claims Against Innovative

As an initial matter, Innovative persuasively argues that the Plaintiff fails to state plausible claims against it under the FDCPA, the MCDCA, the MCPA and state tort law. And so, for the reasons that follow, the Court DISMISSES the complaint.

First, a careful reading of the complaint makes clear that the Plaintiff's claims against Innovative are premised upon the invalidity of the Apartment Debt. In the complaint, the Plaintiff alleges that he and Thayer Terrace "agreed to a broad release of claims, known or unknown, arising out of the tenancy" in the Settlement Agreement. ECF No. 1 at ¶ 9. The Plaintiff also alleges that Innovative improperly persisted with attempts "to collect a debt arising from the tenancy but extinguished on April 1, 2025 via the mutual settlement agreement." *Id.* at ¶ 10. And so, the Plaintiff contends in this civil action that Innovative violated various laws, by attempting to collect the Apartment Debt after this debt had been extinguished by the Settlement Agreement.

Second, the Court agrees with Innovative that a plain reading of the Settlement Agreement shows that Thayer Terrace did not agree to release the Apartment Debt in this agreement. The parties agree that the Settlement Agreement is governed by Maryland law. ECF No. 15 at 3; ECF No. 18 at 2. In this regard, the Fourth Circuit has held that Maryland courts apply the objective theory of contract interpretation, looking to the language of the contract itself. *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007). Given this, the "[C]ourt's duty is to determine the intent of the parties as reflected in the terms of the contract." *Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). And so, when interpreting the language of the Settlement Agreement at issue here, the Court "will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Chaplick for Canal Vista Tr. v. Jeng Fen Mao*, 215 F. Supp. 3d 470, 479 (D. Md. 2016) (quoting *Sy–Lene of Wash., Inc.*, 829 A.2d at 546).

Here, the release language set forth in Section 7 of the Settlement Agreement makes clear that Thayer Terrace did not release the Apartment Debt *via* this agreement. Notably, this provision provides, in relevant part, that:

> (A) <u>Release</u>. **RELEASOR**[5] hereby releases, acquits, and forever discharges all of the **RELEASED PARTIES** of and from any and all claims or demands of whatsoever nature, actions and causes of action, liabilities, damages, debts, sums of money, costs, judgments, obligations, demands, losses of service, attorney's fees, costs of litigation, humiliation, embarrassment, mental anguish, injury to reputation, money benefits or compensation of any kind, whether known or unknown, suspected or unsuspected, fixed or contingent, at

[5] The Settlement Agreement provides that the Plaintiff is the "Releasor" and SHP VI Thayer Terrace, LLC D/B/A Thayer Terrace Apartments and Stellar Realty Management, Inc. are the "Released Parties." ECF No. 14 at 1.

> law or in equity, without reservation or exception, that are in any way related to or arising from the **CLAIMS**. . .
>
> (D) **RELEASOR** understands and agrees that by execution of this **AGREEMENT**, **RELEASOR** intends to release, and do release any and all **CLAIMS** whatsoever, without reservation or exception, that are in any way growing out of, any and all known and unknown, foreseen and unforeseen injuries and damages and the consequences arising out of or related to the **CLAIMS**, regardless of whether such injuries or damages have actually been suffered, experienced, or incurred by the **RELEASOR**, or whether such injuries or damages are suffered, experienced, or incurred in the future. . .
>
> (F) The settlement payment set forth herein shall constitute full and final settlement of any and all claims the **RELEASOR** may have against any of the **RELEASED PARTIES** for any and every reason related to or arising out of the **CLAIMS**.

ECF No. 14 at 3-4. The Court reads the above language to provide that the Plaintiff agrees to release "all claims" that he has against Thayer Terrace "that are in any way related to or arising from" the claims that he brought in the State Lawsuit. *Id.* at 3. The recitals to the Settlement Agreement also explain that these "claims" relate to the Plaintiff's alleged injuries, or damages, as the result of the condition of this apartment unit, as alleged in the State Lawsuit. *Id.* at 1.

The plain language of Section 7 of the Settlement agreement also makes clear that the Plaintiff is the only party providing a release under this provision. *Id.* at 3. Given this, the Court agrees with Innovative that Thayer Terrace did not release any claims that it may have against the Plaintiff related to the Apartment Debt in the Settlement Agreement.

The Plaintiff's arguments to show that Thayer Terrace released the Apartment Debt pursuant to the Settlement Agreement are also unconvincing. The Plaintiff first argues that the parties to the Settlement Agreement entered into a mutual, global release that extinguished the Apartment Debt, because this debt is a claim "arising out of . . . the occupancy of the Premises," as described in the Settlement Agreement. *Id.* at 1. To support this argument, the Plaintiff points to language in Section 4 of the Settlement Agreement, which is entitled "No Admission," and provides, in relevant part that, the parties entered into the Settlement Agreement "to terminate all controversy and/or claims for injuries or damages of whatsoever nature, known or unknown, including further

developments thereof, in any way growing out of or connected with the facts, matters, or allegations involved in the aforementioned **CLAIMS**." *Id.* at 4.

But this general "No Admission" provision does not specifically address the release that the parties agreed to in Section 7 of the Settlement Agreement. And so, to the extent that the general language in Section 4 of the Settlement Agreement conflict with the specific release language contained in Section 7 of that agreement, the specific release language in Section 7 must control. *See Thompson v. United States Dep't of Hous. & Urb. Dev.*, No. 95-309, 2016 WL 6134165, at *4 (D. Md. Oct. 21, 2016) (holding that, "[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it" (quoting *Heist v. E. Sav. Bank, FSB*, 884 A.2d 1224, 1228 (Md. 2005)).

The Plaintiff's reliance upon the recitals in the Settlement Agreement, to show that Thayer Terrace released the Apartment Debt, is also misplaced. To the extent that these recitals could be read to address the release of any claims by the parties, the Fourth Circuit has made clear that "Maryland law recognizes the general principle that such recitals are not binding and, while they may aid the court in interpreting the contract's operative terms, cannot displace or supplement operative terms that are clear." *Sprint Nextel Corp. v. Wireless Buybacks Holdings*, 938 F.3d 113, 127 (4th Cir. 2019).

The remaining arguments advanced by the Plaintiff to show that the Settlement Agreement extinguished the Apartment Debt are also not persuasive. ECF No. 15 at 6. And so, the Plaintiff has simply not shown that the Settlement Agreement extinguished the Apartment Debt, as he alleges in the complaint.

Given this, the Plaintiff fails to state plausible claims against Innovative arising from the collection of the Apartment Debt. For this reason, the Court must DISMISS these claims. Fed. R. Civ. P. 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** the Defendant's motion to dismiss (ECF No. 11); and

(2) **DISMISSES** the complaint.

An Order consistent with this Memorandum Opinion issued on September 14, 2026.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby

LYDIA KAY GRIGGSBY
United States District Judge